IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES DUKE VANLUE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-3608 |
| | § | |
| SCHOELLER BLECKMANN | § | |
| AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

James VanLue sued Schoeller Bleckmann America, seeking a declaratory judgment that his termination from a Schoeller-owned entity, Downhole Technology LLC, was without cause. VanLue also asked for a declaratory judgment that the termination triggered the sale of his Downhole interest at a higher unit price than would apply if his termination was for cause. (Docket Entry No. 1). Schoeller has moved to dismiss for lack of subject-matter jurisdiction. (Docket Entry No. 7). Without responding to the motion, VanLue moved for a temporary restraining order to block the sale of his interest. (Docket Entry No. 9). At a hearing, the court ordered VanLue to file a response to the motion to dismiss, declining to hear argument on, or to decide, the TRO application until subject-matter jurisdiction was established. (Docket Entry No. 12). The court denied VanLue's request for jurisdictional discovery because the relevant facts relating to jurisdiction appeared to be available to both parties. VanLue missed the filing deadline, sending a letter to the court and then filing a motion for discovery and for an extension of time to respond to the motion to dismiss. (Docket Entry No. 13). Schoeller filed a response, renewing its arguments that subject-matter jurisdiction was lacking and suggesting that the court consider sanctioning VanLue. (Docket Entry No. 14).

1

Based on the parties' briefs, the record, and the law, the court grants Schoeller's motion to dismiss for lack of subject-matter jurisdiction and denies VanLue's motions for discovery and for an extension of time as unnecessary. Schoeller has presented convincing evidence that both parties are Texas citizens and that no federal-question jurisdiction exists. VanLue missed the court's clear deadline to file his response showing the a factual basis for invoking federal subject-matter jurisdiction. The court had already orally denied his earlier request for discovery on the jurisdictional question, and he has shown no basis to change that result. No sanctions are issued.

The reasons for these rulings are explained below.

I. **Background**

In 2010, James VanLue founded Downhole Technology, a company that sells products to the petroleum industry. Downhole became a Texas limited company in 2012, and an amended and restated limited liability company agreement was filed that same year. (*See* Docket Entry No. 9-1 at 6). In 2013, VanLue sold his controlling interest to Pelican Energy Partners LP. (Docket Entry No. 1 at ¶ 6). Pelican sold that interest to Schoeller in 2016. (*Id.*) When Schoeller bought Pelican's controlling interest, VanLue and Downhole entered into an employment agreement under which VanLue was to serve as Downhole's CEO. VanLue, Schoeller, and Downhole's agents executed a second amended and restated limited liability company agreement in April 2016. (*Id.* at ¶ 7)

The relationship between VanLue and Schoeller deteriorated. In April 2018, Downhole sent VanLue a letter announcing that it was terminating VanLue's employment based on the preliminary finding that the termination was "without cause." (*Id.* at ¶ 8; Docket Entry No. 9-2). Downhole sent a second letter in September 2018 concluding that, based on the company's

investigation, VanLue's termination was "for cause."  (Docket Entry No. 1 at ¶ 10; Docket Entry No. 9-3).  A few days later, Schoeller sent VanLue another letter reiterating that VanLue was terminated for cause and requring him to sell his Downhole units to Schoeller for an amount calculated under the April 2016 LLC Agreement.  (Docket Entry No. 1 at ¶ 11; Docket Entry No. 9-4).  VanLue did not sell his units.

Whether the termination was for cause dictates the amount of money VanLue is entitled to receive for his equity units under the 2016 LLC Agreement.  VanLue argues that if his termination was without cause, his units are worth over $125,000,000.  If his termination was for cause, his units are worth "only" $15,592,486.  (Docket Entry No. 9 at 4).

On October 19, Downhole sent a final letter to VanLue.  (Docket Entry No. 9 at 2).  Downhole asserted that the preferred member—a member under the 2016 LLC Agreement with the right to purchase Downhole units from a general member after events like that general member's for-cause termination—was exercising his right to purchase VanLue's units, and that the Downhole Board of Directors had approved the units' transfer.  (*Id.*; *see* Docket Entry No. 9-1 at 27).  The letter also explained that the Board of Directors was acting as VanLue's attorney-in-fact and had signed the agreement transferring his units to the preferred member on his behalf.  (Docket Entry No. 9 at 2).  The letter stated that this transfer meant that VanLue was no longer a member of Downhole.  (*Id.*; Docket Entry No. 9-4).

VanLue moved for a temporary restraining order to prevent the unit transfer, and Schoeller responded.  (Docket Entry Nos. 9, 11).  At an oral hearing, the court declined to hear the merits of the motion until subject-matter jurisdiction was established.  (Docket Entry No. 12).  VanLue had until October 29 to respond to the motion to dismiss, but he missed that

3

deadline, moving instead on October 30 for discovery on jurisdiction and for an extension of time to respond to Schoeller's Rule 12(b)(1) motion. (Docket Entry No. 13).

VanLue's motions argue that there is diversity, pointing to a Texas Franchise Tax Public Information Report that lists Schoeller's principal place of business as 1105 N. Market Street, Wilmington, Delaware. (Docket Entry No. 13-1). The Report also shows that each of Schoeller's officers and directors is in Houston, Texas. (*Id.*). Schoeller responded to VanLue's motions, asserting that VanLue "has failed to show how the discovery he seeks will establish the Court's jurisdiction" and requesting the court to consider the Rule 12(b)(1) motion and "entertain Rule 11 sanctions for Schoeller's fees and costs incurred." (Docket Entry No. 14 at 4, 6).

## II. The Legal Standard Under Rule 12(b)(1)

A district court should generally address challenges to its subject-matter jurisdiction and challenges to personal jurisdiction before addressing the merits. *See Steel Co. v. Citizens for Better Envt.*, 523 U.S. 83, 93–102 (1998). Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The burden to establish federal jurisdiction is on the party invoking jurisdiction. *Id.* Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted).

"As a general rule, diversity of citizenship is determined at the commencement of a lawsuit. Subsequent events, such as a change in citizenship or the amount in controversy falling below [the amount in controversy requirement], will not divest the court of subject matter

4

jurisdiction." *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236 (5th Cir. 1988) (citing *Carlton v. BAWW, Inc.*, 751 F.2d 781, 785 (5th Cir. 1985)); *see also Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." (quotation omitted)).

"Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). When examining a factual challenge to subject-matter jurisdiction that does not implicate the merits of plaintiff's cause of action under Rule 12(b)(1), the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case*." Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark*, 798 F.2d at 741. The court may consider matters outside the pleadings, such as testimony and affidavits. *See Garcia*, 104 F.3d at 1261.

### III. Analysis

VanLue argues the court has diversity jurisdiction. Federal courts have diversity jurisdiction over a case when the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332; *Breaux v. Dilsaver*, 254 F.3d 533, 536 (5th Cir. 2001). Under 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). It is undisputed that VanLue is a Texas citizen, that Schoeller is incorporated in Delaware, and that the amount in controversy exceeds $75,000. The

issue for diversity jurisdiction here is whether Schoeller's principal place of business is in Texas. If so, this court lacks subject-matter jurisdiction.

Section 1332 does not define "principal place of business," making the phrase "more difficult to apply than its originators likely expected." The Supreme Court sought to end this confusion in *Hertz Corp. v. Friend*, 559 U.S. 77, 89 (2010). The Court adopted the nerve-center test, defining "principal place of business" as the place where "a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 92–93. The nerve center "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* The Court cautioned that district courts should not be bound by formalities because that would allow jurisdictional manipulation. Under the nerve-center analysis, if a court finds an attempt to manipulate diversity jurisdiction, such as labeling a "bare office with a computer" as the "headquarters" or "nerve center," for example, then the court "should instead take as the 'nerve center' the place of actual direction, control, and coordination in the absence of such manipulation." *Id.* at 97. If the "headquarters" is simply "the office where the corporation holds its board meetings," that would not be the principal place of business. *Id.* at 93. A corporation's description of a location as its headquarters does not, without more, settle the issue. *See id.* at 97.

VanLue's complaint asserts that the parties are diverse because VanLue is a Texas citizen and "Schoeller is a Delaware corporation doing business in Texas," with its principal place of business in Wilmington, Delaware. (Docket Entry No. 1 at 2). Schoeller argues that it "is headquartered in Texas and has no commercial operations in Delaware." (Docket Entry No. 7 at 1). Schoeller contends that the address VanLue offers as evidence of Schoeller's citizenship is

"merely the address for Schoeller's registered agent in Delaware and not where Schoeller's operations are located." (*Id.* at 2).

Schoeller's president, Ismail Nawaz, submitted an affidavit explaining that Schoeller's American headquarters is in Houston, Texas, and that the office contains all Schoeller's records and books. (Docket Entry No. 7-1 at 1). Nawaz states that no Schoeller executives, commercial operations, or physical offices are in Delaware. (*Id.* at 2). Schoeller's only officers—Nawaz and Barbara Leeper, Schoeller's treasurer and controller—work in the Houston office. (*Id.* at 1).

VanLue's response is the Texas Franchise Tax Public Information Report. It lists Schoeller's "principal place of business" as Wilmington, Delaware. (Docket Entry No. 13-1).

As the party asserting diversity jurisdiction, VanLue has the burden of persuasion for establishing it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (136).

"When challenged on allegations of jurisdictional facts," the moving party must provide "competent proof." *McNutt*, 298 U.S. at 189. VanLue's purported factual proof for subject-matter jurisdiction is insufficient. The Supreme Court warned courts against focusing on formalities—such as answers supplied on official forms—when assessing subject-matter jurisdiction. *Hertz*, 559 U.S. at 96 ("[W]e reject suggestions . . . that the mere filing of a form like the Securities and Exchange Commission's Form 10–K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"). Schoeller has explained that the Wilmington, Delaware address is only "the address of Schoeller's Delaware registered agent . . . . [and] is not Schoeller's princip[al] place of business." (Docket Entry No. 7-1 at 2). Schoeller also explains that it "does not have any commercial operations in Delaware"; "does not own real property in Delaware"; "does not have

7

any executives in Delaware"; and "does not own, control, direct, or manage any subsidiaries in Delaware." (*Id.*). The very form that VanLue offers as proof that Schoeller is exclusively a Delaware citizen in fact supports Schoeller's assertion. Although the principal place of business is listed as Wilmington, Delaware, every Schoeller officer and director has a Houston, Texas address. (Docket Entry No. 13-1).

VanLue supports his argument that the Form provides proof that Schoeller is not a Texas citizen with a case from the Western District of Texas. That case is easily distinguished. The court found that a similar form provided evidence contradicting a corporation's claimed citizenship, but only because there was ample other competent evidence, including sworn statements from corporate executives with personal knowledge. *See Origins Recovery of Tex. LLC v. Beech St. Corp.*, No. A-13-CA-300-SS, 2013 WL 12131204, at *2 (W.D. Tex. June 10, 2013) (a tax form was relevant to finding diversity only in conjunction with "undisputed, sworn statement indicating [that] none of [defendant's] executives are located in Texas"). Here, the sworn statements from corporate executives contradict VanLue's position. VanLue has not met his burden of showing that Schoeller's "nerve center" is in Wilmington, Delaware. While the Form supports the conclusion that Schoeller is a citizen of Delaware through its incorporation in that State, the Form does not show that the corporation's principal place of business" is also Delaware.

That Schoeller is a citizen of Delaware does not preclude it from also being a citizen of Texas. Under 28 U.S.C. § 1332(c), corporations are "citizen[s] of every State . . . by which it has been incorporated *and* of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c) (emphasis added). Section 1332(c) permits a corporation to have simultaneous citizenship in two states. The fact that one of a corporation's citizenships is the same as that of

an opposing party defeats diversity. The Fourth, Sixth, and Eleventh Circuits have all rejected the argument that a corporation or court can "pick" a corporation's citizenship to either satisfy or defeat diversity: both state citizenships count given the "and" in section 1332's language. *See, e.g., Roberts v. Mars Petcare U.S., Inc.,* 874 F.3d 953, 957 (6th Cir. 2017); *Life of the S. Ins. Co. v. Carzell*, 851 F.3d 1341, 1344-46 (11th Cir. 2017); *Johnson v. Advance Am.*, 549 F.3d 932, 935-36 (4th Cir. 2008). Because Schoeller has provided convincing evidence of its Texas citizenship, the fact that it may also have Delaware citizenship does not create diversity.

VanLue asks for additional time to respond to Schoeller's Rule 12(b)(1) motion and take discovery on the jurisdictional question. He seeks from Schoeller the production of all documents on jurisdictional issues, including documents relating to: "[Schoeller's] principal place of business, the reason [Schoeller] lists Delaware as its principal place of business in its corporate forms, the location of [Schoeller's] offices and operations, the factors related to the nerve center test, the residency of [Schoeller's] officers, directors, and executives, and the decision-making power of those individuals." (Docket Entry No. 13 at 3–4). VanLue wants "to depose [Schoeller's] corporate representative regarding these jurisdictional issues," explaining that "[w]hen a moving party presents evidence outside the pleadings to challenge jurisdiction, a court should offer the nonmoving party the opportunity to present contrary evidence." (*Id.* at 4 (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Greystone Servicing Corp.*, No. 3:06-CV-0575-P, 2006 WL 2285638, at *4 (N.D. Tex. July 31, 2006))).

The court denies VanLue's discovery request. The court gave VanLue "the opportunity to present contrary evidence" at the hearing and later, instructing VanLue that he had until October 29 to respond to the motion to dismiss. (Docket Entry No. 12). "[T]he party opposing dismissal and requesting discovery . . . bear[s] the burden of demonstrating the necessity of

discovery." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). If "the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion," the court will not permit jurisdictional discovery. *Id.* Fifth Circuit district courts that have permitted limited discovery on jurisdictional issues have done so only when the party asserting jurisdiction "has offered specific facts that support the possibility that" the party alleging that the court lacks jurisdiction "has information that will conclusively determine its citizenship and effectively resolve the jurisdictional dispute." *Merrill Lynch*, 2006 WL 2285638 at *5. VanLue's request for discovery is not narrowly tailored and does not indicate how this or any discovery is likely to show that Schoeller is not a Texas citizen. That is particularly so given that the only document offered to disprove Schoeller's Texas citizenship lists the officers' addresses—a key factor of the nerve-center test for principal place of business—as Texas.

VanLue also requests additional time to respond to the motion to dismiss. (*Id.* at 1, 6). Beyond his argument for additional time for jurisdictional discovery, he does not explain why the court should extend his time to respond, especially given that the deadline for his response has already passed. (*See* Docket Entry No. 12). His request is denied.

## IV. Conclusion

The court grants Schoeller's motion to dismiss for lack of subject-matter jurisdiction, (Docket Entry No. 7), and denies VanLue's motion for discovery and an extension of time to respond to the motion to dismiss, (Docket Entry No. 13). The motion for a temporary restraining order is denied as moot. (Docket Entry No. 9). An order of dismissal is entered separately.

SIGNED on November 5, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge